04cv17363b-ord(SJ).wpd

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **ERNESTO SOLIS,** : | |
| : | **Case No. 1:04-CV-17363** |
| **Plaintiff,** : | |
| : | **JUDGE O'MALLEY** |
| v. : | |
| : | **MEMORANDUM AND ORDER** |
| **LINCOLN ELECTRIC CO., et al.,** : | |
| : | |
| **Defendants** : | |

For the reasons stated below, defendants' motion for summary judgment on Ernesto Solis's claims for conspiracy and negligent undertaking (docket no. 37) is **GRANTED**. Further, defendant BOC's motion for summary judgment on Solis's claims for negligence and strict liability (docket no. 35) is also **GRANTED**, and BOC is dismissed as a defendant in this case.

**I.  Procedural Background.**

Plaintiff Ernesto Solis[1] originally filed his complaint ("petition") in Texas state court; defendants then removed the case to Texas federal court, after which it was transferred to this Court as related to Multi-District Litigation No. 1535, *In re: Welding Fume Prods. Liab. Litig.* In his complaint, Solis alleges that, during his career as a welder, he used welding rods manufactured by various defendants, and he suffered permanent neurological injury when he inhaled the fumes given off by these welding rods. Based on his allegations, Solis states the following claims: (1) negligence

---

[1] Ernesto Solis was originally joined as plaintiff by Claudio Arredondo. The two plaintiffs were severed, however, and Arredondo is not a party to this lawsuit.

and gross negligence; (2) strict liability; (3) negligent performance of a voluntary undertaking; and (4) conspiracy and concert of action. Although he originally named dozens of defendants, Solis has since dismissed all but five of them: Lincoln Electric Company; Hobart Brothers Company; ESAB Group, Inc.; TDY, Inc.; and BOC Group, Inc.

All defendants move for summary judgment on Solis's latter two claims. In addition, defendant BOC moves for summary judgment on Solis's first two claims, as well. After setting out the legal standard, the Court examines these motions below.

**II.     Legal Standard.**

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the

2

essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. Motion by BOC.

Except where noted, the following facts are not in dispute. Solis worked as a welder and a welder's helper for various employers in Texas between 1973 and 2001. Solis testified that he recalls using only welding rods manufactured by Lincoln between 1973 and 1979, while working for four different employers. Solis depo. at 99. In 1979, Solis went to work for the United States Navy at the Naval Air Station ("NAS") in Corpus Christi, Texas. Solis testified that, during his tenure at NAS, he used the following welding rod products during the following approximate time periods: Lincoln rods, 1980 to 1998; Westinghouse rods, 1980 to 1985; Airco rods, 1980 to 1998; Hobart rods, early 1980s; McKay rods, mid-1980s to 1998; ESAB rods, mid-1980s to 1998; and Eutectic rods, late 1980s. *Id.* at 95-108.

BOC submits evidence that it manufactured and marketed welding rods under the Airco brand name from 1931 to 1986. In 1986, however, BOC got out of the business of manufacturing and marketing welding rods. Specifically, BOC sold its Airco welding rod assets to defendant Lincoln, which then continued to market welding rods using the Airco brand name. Further, BOC submits evidence that, until 1986, it sold Airco welding rods in the Corpus Christi, Texas area only through a single distributor – Welder's Equipment, Inc. Although there were three other welding rod distributors in the Corpus Christi area during that time – Tri-Gas, AOC, and Airgas – BOC did not sell any of its welding rod products through those distributors.

Finally, BOC submits the testimony of Robert Isassi, who was the purchasing agent for the maintenance department at NAS where Solis works. Isassi was responsible for purchasing welding rods from local vendors during the period of 1980 through 2004. Isassi testified that, during this period, he purchased welding rods only from distributors Tri-Gas, AOC, and Airgas, and not from

distributor Welder's Equipment. This means that Isassi did not purchase any Airco welding rods manufactured by BOC, as he did not purchase welding rods from the only distributor that sold Airco rods manufactured by BOC. Of course, after BOC sold its Airco rod assets to Lincoln in 1986, Isassi may have purchased Airco rods from one of the other distributors; but those Airco rods would have been manufactured by Lincoln, not BOC.

BOC argues that, in light of this evidence, it is entitled to judgment as a matter of law on Solis's negligence and strict liability claims, for the simple reason that Solis cannot show he ever *actually used* a BOC-manufactured welding rod. It is clear that Texas law requires this link for a plaintiff to prevail on a strict liability or negligence claim in a product liability case. *See Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury."); *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996) ("Firestone conclusively showed it did not design, manufacture or sell the wheel in question. Accordingly, Firestone owed no duty to the Barajases. Firestone negated an essential element of the Barajases' negligence cause of action.")

Solis tries to overcome this evidentiary problem by noting that distributor Airgas purchased distributor Welder's Equipment in 1996. As such, argues Solis, Isassi might have been confused regarding from which distributors he purchased welding rods. This argument fails because it is entirely speculative. Even if Isassi did purchase Airco welding rods from Airgas after 1996, the undisputed evidence establishes that those Airco welding rods were manufactured by Lincoln, not BOC. And there is no factual support for the proposition that Isassi meant to refer to distributor Welder's Equipment, when he listed its eventual purchaser, Airgas, as one of the three distributors

5

from which he bought welding rods during the relevant time period.

Solis notes that, whenever asked, he consistently listed Airco welding rods as ones he used (citing his fact sheet and deposition); and Solis further notes he testified he used Airco products *beginning in 1980*. Thus, Solis argues, there are material facts in dispute. Solis's testimony on this point, however, was clearly an approximation.[2] The Court is mindful that it must view the evidence in a light most favorable to Solis, but "the central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 456 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In this case, defendants offer undisputed testimony that the only distributors from which NAS purchased welding rods never sold Airco rods manufactured by BOC. As BOC phrases it: "1) BOC produced Airco rods for only the first seven years when Mr. Solis worked at NAS; and 2) BOC never sold its rods to the only suppliers who provided NAS with rods during these seven years." Motion at 9.

Ultimately, BOC offers undisputed facts showing that Solis cannot have used any welding rods manufactured by BOC. Solis answers only with an assertion that he recalls using Airco rods during a period that includes a time before 1986, when BOC still manufactured Airco rods. This rough recollection is unsupported by any other evidence. As such, it is not enough to create a genuine issue of material fact. *See Brooks v. American Broadcasting Companies, Inc.*, 999 F.2d

---

[2] Solis's testimony on this point was as follows:
Q. Okay. How about Airco, what's the period of time there?
A. Airco, we used it about the same time as Lincoln.
Q. Okay. From 1980 through '98?
A. Yes.
Depo. tr. at 97.

6

167, 172 (6th Cir. 1993), *cert. denied*, 510 U.S. 1015 (1993) (a court is "not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question"); *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("This court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving testimony.'").

Given all of the evidence adduced, no jury could reasonably find in favor of Solis on his claims against BOC for negligence or strict liability. Accordingly, BOC's motion for partial summary judgment must be granted.

**IV.**     **Motion by All Defendants.**

All five of the defendants that remain parties in this lawsuit move for summary judgment on Solis's third and fourth counts, being: (3) negligent performance of a voluntary undertaking; and (4) conspiracy and concert of action. In response to this motion, Solis "voluntarily withdrew" his claim for conspiracy. Response at 2. Thus, defendants' motion as to count four is granted as unopposed, and Solis's claim for conspiracy and concert of action is dismissed with prejudice.

Solis does oppose defendants' motion regarding count three. To support his voluntary undertaking claim, Solis alleges in his complaint that the defendants "voluntarily assumed the duty and responsibility to report honestly and completely on all research regarding the hazards of manganese containing welding consumables." Complaint at ¶57. Solis further alleges that defendants "breached this duty by failing to adequately test their products, [failing] to accurately report on research that was conducted, publishing and publicizing fraudulent science, and failing, in general, to prudently complete the responsibility which it publicly assumed. *Id.* at ¶58. Solis

adds that defendants "acted with the intent to conceal the health hazards of welding fumes," while "knowing that their studies, publications, specifications, and standards would be adapted and relied upon by manufacturers, sellers, and large consumers of welding products as the authoritative source for warnings, instructions, and precautionary measures printed on product labels." *Id.* at ¶59.

In their motion for summary judgment, defendants argued they were not liable to Solis under the legal theory set out in Restatement (Second) of Torts **§324A**, entitled "Liability To Third Person For Negligent Performance Of Undertaking."[3] In response, Solis states that Restatement (Second) of Torts **§323**, entitled "Negligent Performance Of Undertaking To Render Services," and not §324A, is the applicable law: "§324A is only applicable when a third party (whose protection is contingent upon the voluntary undertaking) is injured as a result of the actor's negligent performance of a voluntary undertaking. [Solis] is not a third party beneficiary of Defendants' voluntary undertaking the duty to report research to the welding community; [Solis] is the direct and immediate beneficiary." Response brief at 6.

Solis then sets out the facts that, in his view, support his claim under the legal theory set out in §323. Solis argues that the defendants – in particular, Lincoln and Hobart – voluntarily assumed a duty they otherwise had no obligation to perform, when they "vowed to do research and to

---

[3] Defendants initially examined §324A, and not §323, for three reasons: (1) Solis alleged, in ¶59 of his complaint (quoted above) that the defendants' voluntary undertaking was not to him directly, but to "manufacturers, sellers, and large consumers of welding products;" (2) the MDL plaintiffs, in a later-withdrawn motion for leave to file a master amendment to all welding fume multi-district litigation complaints, asserted they had "a good faith belief that their cause of action for negligent performance of undertaking under Restatement of Torts (Second) §324A should be allowed in every state;" and (3) this Court earlier denied a motion to dismiss filed by defendant Caterpillar because, among other reasons, plaintiffs had alleged that defendants owed them the duty described in §324A. In any event, defendants answered Solis's discussion of §323 in their reply brief.

understand the science." Solis asserts the defendants "pledged to do research, to understand the science, to protect all welders, and to garner welding expertise in their quest to be the world leaders in the welding industry." To support this assertion, Solis points to the following statements made by defendants' representatives during deposition.

- "I think it is a company's responsibility to understand the science as it relates to how products are manufactured, how they are used in the marketplace, and to do everything possible to protect the people who use those products."
  – John Stropki, Lincoln President and CEO (discussing company mission statement).

- "Strict quality control standards, continuous research directed towards producing new products and improving existing products, and a large customer service staff have combined to make Hobart Brothers a world leader in meeting the constant, changing consumable needs of the international welding . . . industry."
  – Sundram Nagarajan, Hobart Vice President and General Manager (reading from product catalog).

- "Hobart Brothers has an obligation to do everything it can to communicate to its customers how to safely use its products . . . it's our responsibility to make sure that our customers understand that absolutely, to the extent we can, how to safely use our products."
  – Ernest Santi, Hobart President.

Contending that the statements quoted above evidence a voluntary undertaking by defendants, Solis then insists the defendants failed to perform this undertaking:

> Lincoln failed to make good on the responsibilities [it] undertook, Lincoln did not understand the science (or ignored or failed to acknowledge it) and failed to research it as it relates to their welding consumables, and did not do everything possible to protect Plaintiff Ernesto Solis. Plaintiff relied on Lincoln as the undisputed leader in the arc welding business and this welding expertise they claimed to have held. Plaintiff's reliance on Lincoln's undertakings was misplaced.
> * * *
> Hobart neglected this voluntarily assumed duty to research its products. Plaintiff submits Hobart did not meet their voluntarily assumed duty to meet his welding consumable needs; the consumable they provided was not safe and unreasonably dangerous. By not reporting research or failing to conduct research concerning the hazards of manganese in welding fumes, Hobart did not fulfill its voluntarily assumed duty to make sure welders knew how to use their products safely. Plaintiff relied on Hobart's undertakings and their world leader status as an authority on the safety of welding to his detriment.

9

Response brief at 3-4.

Having reviewed the facts and argument mustered by Solis in opposition to defendants' motion for summary judgment, the Court concludes Solis cannot prevail on his claim, as a matter of law. Section 323 states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Defendants argue that Solis cannot prevail under this legal theory because the undisputed facts show they did not undertake to render services to Solis (or any welder) which they should have recognized were necessary for Solis's protection.[4] Under Texas law, which applies in this case, defendants are correct.

---

[4] Defendants also argue the undisputed facts show that, even if they did undertake to render such services, Solis did not *actually rely* on this undertaking. This contention appears well-taken. Solis does not even point to his own testimony or averment that he relied on any statements of voluntary undertaking by Hobart or Lincoln; and he does not assert he actually *received* any of the company mission statements or marketing materials being discussed by the Hobart and Lincoln executives. Absent evidence that he received and relied on the statements that supposedly show the defendants' undertaking, Solis cannot prevail on his claim, unless he can show that defendants' "failure to exercise [reasonable care to perform the undertaking] increase[d] [his] risk of [physical] harm." Restatement §323. *See Fort Bend County Drainage District v. Sbrusch*, 818 S.W.2d 392, 397 (Tex. 1991) (driver plaintiff did not have a negligent undertaking claim against Drainage District for failing to repair a bridge because, even if the District's statements constituted a promise to repair the bridge, "the District's promise was never communicated to the injured party [and therefore] he certainly cannot be said to have relied on the alleged promise"); *Williford Energy Co. v. Submersible Cable Services, Inc.*, 895 S.W.2d 379, 386 (Tex. Ct. App. 1994) (there can be no voluntary undertaking claim based on the defendant company's procedure manual or company newsletter discussing the company's responsibilities, because the plaintiff "did not have, and was not aware of, the contents of the manual or newsletter"). The Court does not address in this opinion any evidence of whether defendants' alleged failure to perform their supposed undertaking may have increased the risk of physical harm to Solis.

First, it is notable that Solis points to no statements by defendants ESAB, TDY, or BOC supporting the contention that they undertook voluntarily to provide services to him. Thus, it is clear that these three defendants are entitled to summary judgment on count three of Solis's complaint.

Further, the above-quoted statements do not establish that Lincoln or Hobart undertook to provide any services to Solis. The statements by Lincoln and Hobart executives that their companies had an obligation to users of their products to make their products safe do not constitute a promise to undertake duties to those product users beyond those already imposed by law. All parties agree that the manufacturing defendants do have a duty to warn about the hazards of using their products, and a concomitant duty to undertake efforts to know what those hazards are. The above-quoted statements merely acknowledge these existing legal duties; they do not represent a voluntary obligation to shoulder additional legal duties.

In *Texas v. American Tobacco Co.*, 14 F. Supp.2d 956 (E.D. Tex. 1997), the court rejected an argument similar to the one made here by Solis. The plaintiff, State of Texas, argued that the tobacco company defendants "voluntarily assumed a duty to report honestly and completely on all research regarding cigarette smoking and health based on their public pronouncements to do so." *Id.* at 973. The State further argued that the defendants negligently performed this undertaking by "failing to report on such research, by publishing and publicizing fraudulent science, and failing, in general, to comply with the promises made in [public statements] and the industry's voluntary code." *Id.* These arguments by the State of Texas are perfectly parallel to Solis's arguments here.

The district court rejected this argument and granted a motion to dismiss, holding that, "[a]lthough Texas courts have adopted §323 of the Restatement as a basis of liability, they have not extended it to create a duty based upon corporate statements or advertising." *Id. See also*

11

*Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3rd Cir. 1999) (under Pennsylvania law, plaintiffs did not have a viable §323 claim against tobacco companies because "[c]onverting a company's marketing into a special undertaking to inform the public about the known risks of is products would subject every manufacturer that advertises its products to liability for a 'special duty' created by such marketing"). Similarly, the corporate mission statements by Lincoln and Hobart executives, and the language quoted from their product catalogs, do not represent a voluntary undertaking by those companies to conduct and issue public reports on research concerning the hazards of manganese in welding fumes.

Further, *internal* corporate policies also do not constitute a voluntary undertaking to provide services to others. *See, e.g., Entex v. Gonzalez*, 94 S.W.3d 1, 9-10 (Tex. Ct. App. 2002) (gas company's policy of "inspect[ing] and warn[ing] customers about unelevated water heaters and storing flammable vapors near them" did not constitute the voluntary assumption of a duty); *Jacobs-Cathey Co. v. Cockrum*, 947 S.W.2d 288, 291-92 (Tex. Ct. App. 1997) (contractor-company's policy of removing debris left at its work sites by other parties did not create a duty to persons injured by others' debris that the company did not remove). Even if the manufacturing defendants had internal corporate policies to conduct rigorous testing of the safety of their products, and/or to conduct research on the health effects of their products, these policies do not translate into a §323 voluntary undertaking to report the results of those tests and studies to their product buyers and users.[5]

In sum, the undisputed facts show that Solis cannot show one of the required elements of a

---

[5] This is not to say, of course, that any such tests and research are not admissible evidence relevant to Solis's claim for failure to warn.

12

§323 claim for negligent performance of a voluntary undertaking – that is, that the defendants actually voluntarily undertook to provide services to Solis. Thus, the defendants are entitled to summary judgment on this claim as a matter of law.

**V.      Conclusion.**

For the reasons stated above, summary judgment is granted to all defendants on Solis's claims for conspiracy and negligent undertaking. Further, summary judgment is granted to defendant BOC on Solis's claims of negligence and strict liability. Given that BOC has obtained summary judgment on all claims against it, BOC is dismissed as a defendant in this case.

**IT IS SO ORDERED.**

<u>/s/ Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**: May 10, 2006